## SOUTHERN ROCK ISLAND PLOW CO.
### v. WILLIAMS.
### No. 4314.

Court of Civil Appeals of Texas. Amarillo.
Dec. 3, 1934.

Rehearing Denied March 18, 1935.

C. D. Russell, of Plainview, for appellant.

L. G. Mathews, of Floydada, for appellee.

HALL, Chief Justice.

The appellant plow company sued the appellee Williams alleging that he had executed his note payable to D. W. Fyffe, in the sum of $970 on July 20, 1931, payable on or before July 1, 1932, with 10 per cent. interest and 10 per cent. attorney's fees, and at the same time executed a chattel mortgage on certain farming implements and machines, including a model F, Rock Island tractor, and all the wheat to be grown on 310 acres of land in section 27, block D–1, Floyd county. That before maturity thereof and for value, Fyffe indorsed and delivered to appellant the aforesaid note and mortgage, and that appellant is the owner and holder thereof in due course.

The appellee answered by general demurrer and special exceptions, a general denial, and by way of special denial and cross-action alleged that he executed and delivered the note sued upon to J. E. Spencer, agent and representative of the Southern Rock Island Plow Company, payable to D. W. Fyffe in the sum named in plaintiff's petition. That said note was a renewal of a note theretofore given to Fyffe and transferred by the latter to appellant Plow Company. That he executed the chattel mortgage as described in plaintiff's petition. That said note and mortgage were renewals and extension agreements of a prior note and mortgage given November 12, 1930, by him to Fyffe. That the note was given by him originally for a part consideration for one model F, 18–35 Rock Island tractor, which he purchased from Fyffe in February, 1929. That said tractor was guaranteed to be good and perfect in material and workmanship and that each extension and mortgage was secured by plaintiff and its agents and employees by fraudulent means. That said tractor when purchased had a motor in it that had the wrong cylinder head, and that said motor or cylinder head which was on said tractor was for a different motor than the one in the tractor. That the appellant company, through its agents and representatives, promised appellee if he would renew said notes and mortgages that they would repair said tractor and make it fulfill the guaranty. That the company would change the cylinder head. That after changing said cylinder head, the tractor had no power and defendant was unable to use it for the purpose of pulling a combine or plow, such as the tractor was guaranteed to pull, and not until the fall of 1930, when the defendant renewed the original note and gave a new mortgage, was the tractor completely worked over, and upon the representations and promises of G. E. Goodloe, agent and representative of plaintiff, that, if defendant would renew said note and mortgage, the tractor would be placed in first class condition. That said Goodloe, in November, 1930, had said tractor worked over. That while working on the tractor, the motor head was left off, the cylinders got full of water, the cylinder walls rusted, and the motor was rendered useless, all of which occurred after this defendant gave said note and mortgage. That if it had not been for the fraudulent representation and promise of appellant to place said tractor in first-class condition, de-

fendant would not have renewed said note and mortgage and put the additional security on the same. That on or about the 20th day of July, 1931, J. E. Spencer, another agent of plaintiff, came to defendant, stating that plaintiff was ready and willing to place the tractor in good condition as they had so long promised, provided defendant would again renew said note and give a mortgage as described in plaintiff's petition. That defendant agreed to do so, if plaintiff would repair, change, alter, or fix up said tractor and put it in a good condition so that said tractor would do the work that it was guaranteed to do when purchased by defendant, and upon the said J. E. Spencer's promises and assurances that said tractor would be so repaired and placed in good condition for work, defendant renewed said note and gave the mortgage as described in plaintiff's petition. That after he had given said note and mortgage, plaintiff failed and refused and has continued to fail and refuse to place the tractor in a condition to do the work that it was guaranteed to do, and that, if it had not been for the fraudulent promises and fraudulent representations of plaintiff's agent Spencer, this defendant would not have given said note and mortgage, and that said note and mortgage was procured by the fraudulent acts and representations, all of which this defendant relied on, and he, being an ordinary farmer, having dealt with plaintiff fairly and honestly and believing that plaintiff would so deal with him, all of which plaintiff failed and refused to do. That said note sued on was made payable to D. W. Fyffe to defraud this defendant, and has been indorsed to plaintiff by Fyffe, having never owned said note and was never the property of said D. W. Fyffe, the note of which the note sued upon was a renewal note, was indorsed over to plaintiff by said D. W. Fyffe long prior to the date this defendant gave the note and mortgage involved in this suit, and that said note sued on was never the property of the said D. W. Fyffe, and this defendant would further show the court and alleges to be true that the fraudulent representations and fraudulent acts made to and perpetrated upon this defendant as hereinbefore alleged to have been by Goodloe and Spencer, agents and representations of plaintiffs, were fraudulently made to this defendant for the sole and only purpose of inducing this defendant to give the note and mortgage sued on to said G. E. Goodloe and J. E. Spencer, knowing them to be false at the time they were made, and that they had no intention of binding themselves or the plaintiff by said fraudulent statements and acts. That they had no intention of performing said repair on said tractor at the time said promises were made and said note and mortgage procured by said fraudulent acts and representations and with the design to deceive this defendant and to induce this defendant in the giving of said note and mortgage, and said representations were further made without the intention of being bound thereby and with the intent to deceive this defendant and in order to induce him to act upon said false acts and representations and give said renewal note and mortgage, knowing that defendant would rely upon their false representations.

By way of cross-action the defendant further alleged that, as a result of the false promises and fraudulent representations of plaintiff's agents, he was compelled to hire other tractors to break his own land at an expense of $1,000.

The court sustained a demurrer to the cross-action.

The case was submitted to a jury upon special issues, in response to which the jury found that: (1) At the time of the execution of the note and mortgage sued upon, J. E. Spencer represented to Williams that, if he would execute such note and mortgage, plaintiff would put the tractor in good condition for work; (2) that defendant believed and relied on such promises; (3) and was induced by such promises to execute the note and mortgage sued upon; (4) that the promise was made with the present intent to deceive defendant; (5) and with the present intention on the part of Spencer not to put the tractor in good condition for work; (6) that the promise to put it in good condition was falsely made with the intent at the time not to carry out such promise; (7) that the promise was made for the purpose of inducing the defendant to execute the note and mortgage for plaintiff; (8) that Williams would not have executed the note and mortgage save for such promises; (9) that plaintiff never did put the tractor in good condition for work.

Based upon this verdict, the court rendered judgment that the appellant take nothing.

The appellant's brief contains six assignments of error and four propositions. These appear consecutively in the brief, but there is no statement, authorities, or argument following each of the propositions. All the propositions relating to different matters are grouped, and there is only one statement, commingled with argument and authorities following the four propositions. This is a violation of the rules of briefing, and does

342

not entitle appellant to have the brief considered, except in so far as it urges fundamental error. Williams v. Kelley (Tex. Civ. App.) 77 S.W.(2d) 263; Tallabas v. Wing Chong (Tex. Civ. App.) 72 S.W.(2d) 636; Threadgill v. Fagan (Tex. Civ. App.) 64 S.W.(2d) 405; Holsomback v. Taylor (Tex. Civ. App.) 61 S.W.(2d) 544; Associated Indemnity Corporation v. Baker (Tex. Civ. App.) 76 S.W.(2d) 153.

By one proposition appellant insists that the court erred in refusing to direct a verdict for appellant because the pleading and evidence of the appellee was insufficient to require the court to submit any issues of fact to the jury. We have concluded to consider this proposition.

The sales contract provides that the title to the property shall not pass to the purchaser until the purchase price has been fully paid in cash, and further provides that the seller may take possession without any demand or notice and without due process of law, and wherever the tractor may be found; that the seller may take immediate possession of the property without demand upon default and may sell it at public or private sale without demand for performance with or without notice to the purchaser. It is difficult to conceive of a more complete reservation of title in the seller.

In order to induce Williams to execute the last renewal note and mortgage, being the instruments forming the basis of this suit, Williams testified that Spencer agreed to have the tractor repaired, saying he would make it stand up, would put a new motor in it or deliver the goods. That he tried to get Williams to renew the note that afternoon, which Williams refused to do. Spencer then said he would take the matter up with the company, and upon those assurances Williams signed the new note and mortgage.

A question is raised as to the authority of Spencer to make the promises and representations. Fyffe testified that Spencer was a representative of the plow company; that he had been notified several times by the company that Spencer was its representative; that he treated Spencer as such; and that Spencer handled the business for the company which the company afterward accepted. Spencer himself testified by deposition that he was the adjuster and collector for the Southern Rock Island Plow Company.

█ The general rule is that when the principal sends an agent to a person for the express purpose of adjusting a dispute, and that person has no knowledge of any limitation upon the agent's authority to complete the adjustment, the principal cannot deny the fact of the agent's authority. Townsend v. South Plains Monument Co. (Tex. Civ. App.) 257 S. W. 648; Tabet v. Powell (Tex. Civ. App.) 78 S. W. 997; Household Furniture Co. v. Storrie (Tex. Civ. App.) 292 S. W. 612.

█ It is settled law that fraud in the matter of inducement is fatal to a contract, and this rule applies to bills and notes in the hands of the original payee or a transferee with notice. As said in the early case of Drinkard v. Ingram, 21 Tex. 650, 73 Am. Dec. 250: "Fraud is a defence which is cognizable as well in Courts of law as of equity; and, it is said, it is even more odious than force; It annuls all contracts, and even the most solemn acts and judgments of Courts, which are infected with it."

"Fraud which has induced the execution of a written contract is a good defense to an action at law for the enforcement of the contract, even though the party defrauded also has the alternative right to equitable relief in a suit for cancellation or rescission." 20 Tex. Jur. 120 § 80.

Citing many authorities, the rule is stated in 6 Texas Jurisprudence, 867, § 214, that a plea which alleges that the execution of a negotiable note was induced through fraud, may be set up in a suit on the instrument against one not a holder in due course, and that as between the immediate parties it may be shown that the execution of the instrument was induced by fraudulent promises which the promisor had no intention at the time of performing, and that the promises were relied on and induced the signing of the paper.

█ It is held in numerous cases in this state that fraud is a defense to commercial paper, and where such paper is executed by the maker who relies upon the promises of the payee and such promises are not fulfilled, the fraud and breach may be interposed as an absolute defense. Trammell v. Swan, 25 Tex. 473, 474; Lee v. First National Bank (Tex. Civ. App.) 254 S. W. 394; First State Bank v. Petrucha (Tex. Civ. App.) 38 S.W.(2d) 138; Siggel v. Lindig (Tex. Civ. App.) 291 S. W. 920; Johle v. Martin (Tex. Civ. App.) 291 S. W. 296; Carson v. Taylor (Tex. Civ. App.) 238 S. W. 261; Webb v. Moseley, 30 Tex. Civ. App. 311, 70 S. W. 349. And the same rule applies where through fraudulent promises and representations the maker has been induced to execute a renewal note. Culver v. Haggard (Tex. Civ. App.) 252 S. W. 1092; Id. (Tex. Com. App.) 270 S. W. 846.

We think a proper judgment has been entered, and it is affirmed.